UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | |
|---|---|
| MAX GOLDSTON,<br><br>           Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>           Defendant. | Case No. 1:22-cv-20486 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Max Goldston ("Plaintiff"), by and through his attorneys, alleges the following violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.* against Defendant Experian Information Solutions, Inc. ("Defendant").

### I.     INTRODUCTION.

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by the Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. §1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

### II.     JURISDICTION AND VENUE.

2.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. §1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Southern District of Florida is proper pursuant to 28 U.S.C. §1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.    PARTIES.

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in Miami, Florida.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 USC §1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Florida and conducted business in the State of Florida on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV. **FACTUAL ALLEGATIONS.**

12. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA"), in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17. Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

18. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

19. Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

21. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

22. Defendant's unreasonable policies, procedures, and/or algorithms consistently fail

to identify and update pre-bankruptcy debts as required by §1681e(b).

23. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

25. The information Defendant includes in consumer reports contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

26. FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

27. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

28. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

29. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

30. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant in its consumer reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

31. Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant/s.

32. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

33. Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

34. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

35. Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

36. Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged; both such exceptions

are rare and furthermore identified on the individual consumer's bankruptcy docket sheet.

37. Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

38. Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

39. Defendant also knows that accounts that are paid off prior to a consumer's bankruptcy should not be reported as included and/or discharged in bankruptcy, regardless of whether the account was charged-off prior to the consumer's bankruptcy.

40. However, Defendant regularly reports inaccurate information about consumers after they receive a Discharge Order.

41. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

42. After a bankruptcy is discharged, Defendant also routinely relies on furnisher data, even though the furnisher has ceased updating an account upon the filing of a bankruptcy and the account information is "stale."

43. Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's consumer files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

44. Defendant's unreasonable policies and procedures cause it to routinely report

inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

45. Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by §1681(e)(b), despite possessing information inconsistent with the reported information that establishes the reported information is inaccurate.

46. Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

47. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by §1681(e)(b).

48. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendant's own files.

49. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge.

50. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Consumer Reporting of Plaintiff*

51. Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about May 10, 2021, in the United States Bankruptcy Court for the Southern District of Florida (Case No. 21-14530).

52. Plaintiff received an Order of Discharge on or about August 20, 2021.

53. Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

54. Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

55. In Plaintiff's consumer reports, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged in the Public Records section of Plaintiff's consumer report.

56. Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

57. Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

58. Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

59. Defendant failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

60. Defendant inaccurately reported Plaintiff's CB Indigo Accounts (the "Accounts"), ending in 0240 and 9498 and opened in August 2019, which predated Plaintiff's bankruptcy filing.

61.	The Accounts were discharged in Plaintiff's bankruptcy on or about August 20, 2021. Therefore, the Accounts should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

62.	However, Experian inaccurately reported the discharged Accounts with balances of $262 and $106, instead of zero-dollar balances.

63.	Defendant had ceased reporting or updating the Accounts with any new information after the filing of Plaintiff's Chapter 7 bankruptcy.

64.	The 0240 Account was last updated in November 2020

65.	The 9498 Account was last updated in October 2019.

66.	Defendant knows that the Accounts have not been updated since prior to Plaintiff's Chapter 7 filing.

67.	Defendant did not indicate that the Accounts were discharged in bankruptcy or report the Accounts with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

68.	The Accounts were essentially frozen in time by Defendant based on a pre-bankruptcy balance and status on Defendant's May 10, 2021 and November 24, 2021 consumer reports. Consequently, Defendant inaccurately reported the actual balance, status, and payment obligations on the Accounts.

69.	Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendant reports a discharge.

70.	Defendant does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Defendant is aware that the furnisher has

ceased all account updates after the bankruptcy was filed.

71. Notably, two of the other national consumer reporting agencies Equifax and Trans Union did not inaccurately report the Accounts like Defendant.

72. Upon information and belief, CB/Indigo furnished information to Defendant that indicated Plaintiff's Accounts were included or discharged in bankruptcy, and/or had zero-dollar balances after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

73. Alternatively, upon information and belief, Defendant knew from past experiences that CB/Indigo furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

74. Nevertheless, Defendant blindly relied on the information provided by CB/Indigo even though this information conflicted with information contained in Defendant's records, contradicted other information Defendant reported about Plaintiff, or neglected Defendant's knowledge regarding Plaintiff's bankruptcy and discharge. or was contradicted by information contained in Defendant's records, as well as Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

75. If CB/Indigo did not furnish data to Defendant that the Accounts were discharged, Defendant's blind reliance on the furnisher, CB/Indigo, was unreasonable.

76. Defendant was unreasonable in failing to consider the fact that since CB/Indigo ceased updating the Accounts after Plaintiff's bankruptcy was filed, CB/Indigo was an unreliable furnisher in this instance.

77. Defendant inaccurately reported that Plaintiff owed a balance that Plaintiff did not

actually owe, and also reported inaccurate account status and/or payment histories.

78. Defendant inaccurately reported the Accounts with balances owed after the Accounts were discharged in Chapter 7 Bankruptcy and therefore had zero-dollar balances.

79. Defendant failed to indicate that the Accounts had zero-dollar balances and/or were discharged in Chapter 7 Bankruptcy.

80. Defendant's reporting of the Accounts is patently false/incorrect and therefore inaccurate.

81. If not patently false/incorrect, Defendant's reporting of the Accounts is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

82. Upon information and belief, had Defendant accurately reported the Accounts with zero balances, Plaintiff's credit scores and creditworthiness would have been better.

83. After Plaintiff's bankruptcy discharge, Plaintiff applied for credit opportunities with Macy's and Wells Fargo and was denied due to Defendant's inaccurate reporting.

84. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Capital One, Macy's, and Wells Fargo by Defendant during the process of Plaintiff's credit applications.

85. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

86. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V.     COUNT I.

**Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681e(b)**

87. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

88. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. §1681e(b).

89. Defendant negligently and/or willfully violated 15 U.S.C. §1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's consumer information pertaining to pre-bankruptcy debts after a consumer Plaintiff received a Discharge Order.

90. Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

91. When Defendant voluntarily procured and reported Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

92. Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

93. Individual furnishers of account information also notified Defendant of Plaintiff's bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report that are labeled included and discharged in bankruptcy.

94. Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing, and date of discharge.

95. But despite having knowledge of Plaintiff's bankruptcy, Defendant inaccurately reported the Accounts, which predated Plaintiff's Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and a balance greater than zero.

96. Defendant knew or should have known of its obligations under the FCRA, especially those pertaining to reporting discharged debts with zero-dollar balances.

97. These obligations are well established by the plain language of the FCRA, in promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

98. Additionally, Defendant possesses or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

99. Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties in violation of 15 U.S.C. §1681e(b). Accordingly, Defendant deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

100. Not only did Defendant have prior notice of its unreasonable procedures for reporting discharged debts, but it also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

101. Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

102. Defendant knows that discharged pre-petition debts should not be reported as late,

*Experian Information Solutions, Inc.*
Complaint

past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

103. Yet in this case, Defendant reported the Accounts, which predated Plaintiff's bankruptcy, with balances owed (instead of zero-dollar balances) after they were discharged.

104. Defendant knows that the Accounts have not been updated since before Plaintiff's Chapter 7 Bankruptcy, and the reported balances, payment obligations, and statuses are therefore inaccurate, outdated, and have been superseded by Plaintiff's Chapter 7 discharge.

105. Defendant violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

106. Defendant also violated 15 U.S.C. §1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

107. Defendant has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations in its reporting for pre-bankruptcy accounts in Defendant's automated "bankruptcy scrubs" it has been employing for over a decade.

108. Defendant's violations of 15 U.S.C. §1681e(b) were willful.

109. Alternatively, Defendant's violations of 15 U.S.C. §1681e(b) were negligent.

110. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

111. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for debts that were discharged in bankruptcy, and otherwise failing to report that the

Accounts were discharged in bankruptcy.

112. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, loss of sleep, anger, frustration, shock, embarrassment, and anxiety.

113. Defendant is a direct and proximate cause of Plaintiff's damages.

114. Defendant is a substantial factor in Plaintiff's damages.

115. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. §1681 et seq.

## PRAYER FOR RELIEF.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

a. Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. §1681e(b);

b. An award of actual damages pursuant to 15 U.S.C. §§1681n(a)(1) or 1681o(a)(1);

c. An award of statutory damages pursuant to 15 U.S.C. §§1681n(a)(1) and 1681o(a)(1);

d. An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. §1681n(a)(2),

e. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and §1681o(a)(2); and

f. Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VI. JURY DEMAND.

Plaintiff hereby demands jury trial on all issues so triable.

Date: February 16, 2022

/*s/ Santiago J Teran*
Santiago J Teran (FL Bar No. 1018985)
E-mail: santiago@pricelawgroup.com
Price Law Group, APC
2125 Biscayne Bldv., Ste 206
Miami, FL 33137
Direct: (347) 946-7990
Telephone: (818) 600-5586
Facsimile: (818) 600-5486
*Attorneys for Plaintiff Max Goldston*